IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BRADD MARTIN,<br><br>Plaintiff,<br><br>v.<br><br>WANDA HAIRSTON (in her individual capacity), JANET BLUE (in her individual capacity), Paul Tine, and THE CITY OF WINSTON-SALEM,<br><br>Defendants. | 1:25-CV-344-DAB-JGM |

## **OPINION**

Plaintiff Bradd Martin, a North Carolina resident, brings this action under 42 U.S.C. § 1983 against Wanda Hairston and Janet Blue, in their individual capacities, Paul Tine,[1] the Commissioner of the North Carolina Division of Motor Vehicles, in his official capacity, and the City of Winston-Salem for alleged violations of Martin's rights under the First, Fourth and Fourteenth Amendments. Martin seeks "declaratory relief," "injunctive relief," "nominal and compensatory damages," and "costs." Martin claims he was wrongfully given a trespass warning by Winston-Salem police officers at the request of DMV employees at a DMV location. Hairston,

---

[1] The original complaint brought claims against Wayne Goodwin, the former Commissioner of the North Carolina Division of Motor Vehicles. Under Rule 25(d) of the Federal Rules of Civil Procedure, Paul Tine should be substituted as the Defendant in this suit. As "state officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them[,]" this court will treat the claims brought against Paul Tine as claims brought against the North Carolina Division of Motor Vehicles at large. *Hafer v. Melo*, 502 U.S. 21, 27 (1991) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

Blue, and Tine (collectively, the "NCDMV Defendants") and the City of Winston-Salem have submitted Motions to Dismiss pursuant to Rules 4, 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(4), 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure. *Motion to Dismiss by NCDMV Defendants*, D.E. 9 (Aug. 5, 2025); *Motion to Dismiss by City of Winston-Salem*, D.E. 14 (Aug. 6, 2025). For the following reasons, the Court grants the motion and dismisses this action without prejudice.

## FACTUAL BACKGROUND

The facts, taken as true from Plaintiff Brad Martin's verified amended complaint and attached exhibits for the purposes of Defendants' motion to dismiss show the following:

On August 17, 2023, Martin entered the DMV office located at 2001 Silas Creek Parkway, Winston-Salem, (the "Silas Creek DMV"), holding a camera at chest level with the intent to record signs and the services offered by the DMV to the public. *Amended Complaint*, ¶ 12, D.E. 5 (Jun. 27, 2025). After entering the facility, Martin passed signs stating "No Cell Phones" in the general lobby and then passed through a doorway marked by nearby signage as "Employees and Authorized Personnel Only." *Id.* ¶ 13–14. Martin was then told by a DMV employee "No, you can't do that [recording] back here. I'll have you step back out for me please." *Id.* ¶ 15. After exiting the restricted zone, the Winston-Salem Police Department arrived and delivered a trespass warning at the request of DMV Manager Janet Blue. *Id.* ¶ 17. Martin left. Martin was informed that he was permanently banned from the Silas Creek DMV. *Id.* ¶ 2.

Later, Martin spoke over the phone with DMV Supervisor Wanda Hairston about the incident. *Id.* ¶19. Hairston confirmed the ban was due to Martin's recording at the DMV. *Id.* When Martin sought to appeal the ban, he was redirected back to Hairston. *Id.* The ban was limited to only the Silas Creek DMV. *Id.* Martin continues to have access to any other DMV in the state, and Hairston offered to make him an appointment at a second DMV location in Winston-Salem. *Amended Complaint*, Ex. A, D.E. 5.

Following the phone call with Hairston, Martin repeatedly attempted to escalate the issue but was informed that the matter was closed. *Amended Complaint*, ¶ 21–21, D.E. 5. He submitted a written complaint through the DMV's online system but did not receive relief. *Id.* ¶ 23. Martin also filed a complaint with the Winston-Salem Police Department. *Id.* ¶ 24. That complaint went through the Winston-Salem

Police Department's internal review process. The Winston-Salem Police Department maintains the officers acted within policy. *Id.*

Martin brought this action on May 2, 2025. He filed an Amended Complaint on June 27, 2025. Martin had 90 days from that filing to complete service on all parties. The NCDMV Defendants filed a Motion to Dismiss on August 6, 2025, alleging lack of process on Hairston and Wayne Goodwin. Martin acknowledged the lack of service in his Response filed on August 19, 2025. *Plaintiff's Consolidated Response*, D.E. 21 (Aug. 19, 2025). Martin cured service on Hairston on September 17, 2025. But nothing in the record shows he cured service on Goodwin or Tine in their official capacities.

## ANALYSIS

### I.    Absence of Personal Jurisdiction

Defendants first move to dismiss the complaint for lack of personal jurisdiction and for lack of service of process. Fed. R. Civ. P. 12(b)(2) & 12(b)(5). Proper service of process is a prerequisite to the exercise of personal jurisdiction. *See Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). Absent valid service, a court lacks authority to enter judgment against a defendant. *Koehler v. Dodwell*, 152 F.3d 304, 306–307 (4th Cir. 1998). "The plaintiff bears the burden of establishing that the service of process has been performed in compliance with the requirements of Rule 4 of the Federal Rule of Civil Procedure." *Elkins v. Broome*, 213 F.R.D. 273, 275 (M.D.N.C. 2003).

Rule 4 sets out the manner and methods of service for different categories of defendants. Fed. R. Civ. P. 4. Rule 4(e) governs service of process on individuals, and Rule 4(j)(2) governs service of process on state or local governments and individuals acting in their official capacities of the governments. Fed. R. Civ. P. 4(e) and 4(j)(2). A plaintiff may serve process on a defendant sued in his or her individual capacity by delivering a summons and complaint to the individual personally, by leaving a summons and complaint at the individual's house or other place of abode with someone of suitable age and discretion who resides there, by serving the individual's authorized agent, or by serving the individual in compliance with the law of the state where the federal court is located. Fed. R. Civ. P. 4(e).

A plaintiff must serve an individual acting in his official capacity either by (A) "delivering a copy of the summons and of the complaint to its chief executive officer;" or (B) "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Fed. R. Civ. P. 4(j)(2). Under North Carolina law, service on a state agency or officer must be made either by (A) "personally delivering a copy of the summons and of the complaint to the

process agent appoint by the agency;" (B) "mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to said process agent;" or (C) "depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the process agent, delivering to the addressee, and obtaining a delivery receipt." N.C. Gen. Stat. § 1A-1, Rule 4(j)(4). Moreover, an official-capacity suit is, functionally, a suit against the state. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991).

Here, service of process was not performed on Wanda Hairston, Paul Tine (in his official capacity), or on the City of Winston-Salem before the filing of the Motions to Dismiss, nor was it performed within the 90-day period required by Rule 4(m). Martin cured service on Hairston and the City of Winston-Salem after the Motions to Dismiss. However, this Court has seen no evidence that Martin cured service on Tine. As the plaintiff bears the burden of establishing that service of process has been performed, the absence of this evidence is fatal to Martin's claim against Tine. For that reason, this Court will allow the cure as to Hairston and the City of Winston-Salem but will dismiss the claims against Paul Tine in his official capacity as Commissioner of the North Carolina Division of Motor Vehicles.

## II.  Sovereign Immunity

The Court also dismisses the claims for damages against Tine in his official capacity due to sovereign immunity. As an "arm of the state," the North Carolina DMV enjoys the same Eleventh Amendment immunity protections as the state of North Carolina. *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996). As state officials in their official capacity are also immune to suits for damages brought under § 1983, this immunity protection extends to Tine in his official capacity. *Hafer,* 502 U.S. at 27. The North Carolina DMV never waived its immunity, nor has Congress overridden that immunity. *Philips v. N. Carolina State*, No. 5:15-CV-95-F, 2015 WL 9462095, at *6 (E.D.N.C. Dec. 28, 2015), *aff'd*, 667 F. App'x 419 (4th Cir. 2016). Moreover, even if sovereign immunity was waived, the Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983," where the plaintiff seeks monetary damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Under *Will*, the claim for monetary damages against Paul Tine acting in his official capacity must be dismissed.

## III.  Rule 12(b)(6) Motions

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim,

or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When analyzing a 12(b)(6) motion, a court accepts as true all well-pleaded allegations of the challenged complaint and views those allegations in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[ ] the[ ] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; see also *Iqbal*, 556 U.S. at 678. Thus, mere legal conclusions should not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### A. Individual Capacity Claims Against Hairston & Blue

The Individual Defendants bring a motion to dismiss for qualified immunity and lack of subject matter jurisdiction as to the individual capacity claims against Hairston and Blue under 12(b)(1), 12(b)(2), and 12(b)(6).

Defendants argue that Hairston and Blue are entitled to qualified immunity in their individual capacities. *See Motion to Dismiss by NCDMV Defendants*, D.E. 9. "Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Davison v. Rose*, 19 F.4th 626, 640 (4th Cir. 2021) (quoting *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006)). Unlike actions taken in their official capacity, state officials are not immune to personal liability for § 1983 claims if it can be shown that "the official, acting under color of state law, caused the deprivation of a federal right." *Hafer*, 502 U.S. at 25 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). To establish personal liability, a plaintiff must show "(1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known." *Davison v. Rose*, 19 F.4th 626, 640 (4th Cir. 2021) (internal quotation marks omitted) (quoting *Ridpath v. Bd. Of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006)).

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Courts must define the right at issue with specificity, *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019), and the particulars matter such that a government official could "determine how the relevant legal doctrine will apply to the factual situation." *Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 683 (2023).

Following the two-step test outlined in *Davison*, this Court must address each of the constitutional violations alleged.

### i. First Amendment Retaliation for Protected Conduct

"A plaintiff seeking to recover for First Amendment retaliation must allege that (1) []he engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her[is] First Amendment rights, and (3) there was a causal relationship between h[is] protected activity and the defendants' conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). Recording government officials can be, but is not always, a protected activity. *See Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Frasier v. Evans*, 992 F.3d 1003, 1021 (10th Cir. 2021); *Sharpe v. Winterville Police Dep't*, 59 F.4th 674, 681 (4th Cir. 2023); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000). The right to record in public places, as a part of the right to free speech, is "subject to reasonable time, manner and place restrictions." *Smith*, 212 F.3d at 1333. Different levels of scrutiny apply to regulations of protected speech in different locations and forums. The Supreme Court has developed a "forum based" approach to determine whether a forum is a public forum or a non-public forum. *Int'l Soc. For Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992).

Martin claims that Hairston and Blue retaliated against him for filming a location that was open to the public. In this claim, he makes a conclusory legal assertion that the DMV was "public-facing." *Consolidated Response*, D.E. 21 at 4. The court interprets this as an assertion that the DMV was a public forum. Martin is wrong. The "inside of a DMV branch office is a nonpublic forum," where "to pass constitutional muster the challenged prohibition need only be reasonable and viewpoint neutral." *Avedisian v. Holcomb*, 853 F. Supp. 185, 188 (E.D. VA. 1994) (citing *Lee*, 505 U.S. at 679); *see also Rodriguez v. Roberson*, No. 5:23-CV-745-M-BM, 2024 WL 3898446 (E.D.N.C. July 29, 2024), *report and recommendation adopted,* No. 5:23-CV-00745-M-BM, 2024 WL 3895991 (E.D.N.C. Aug. 21, 2024) (holding that filming in a DMV is not a clearly established right). Accordingly, the level of scrutiny applied to regulations of protected speech in the DMV is lower.

Martin also admits there was a sign stating "No Cell Phones" in the general check-in area, as well as a sign labeling an area that he entered as "Employees and Authorized Personnel Only." These signs identified speech restrictions in the DMV branch office. This Court does not need to weigh the constitutionality of the speech restriction at this time. It is enough to show that there was no violation of a clearly established right of which a reasonable person would have known.

Martin has not provided any authority in this circuit, nor is this Court aware of any authority, indicating that taking videos in a DMV facility without permission constituted a "clearly established right." Moreover, he did not point to any authority which would show that Martin's denial of service and trespassing from the process was a violation of a "clearly established right." Any restrictions on filming in the DMV, as a non-public forum, would only need to be reasonable and viewpoint neutral. Martin has not made any claims suggesting the restrictions do not meet this standard. Accordingly, even if the Court takes Martin's conclusory factual allegations that the actions constituted "clearly established violations" as true, a reasonable person would not have known that compliance with clearly posted signs in a non-public forum was a violation of clearly established rights.

### ii. Fourth Amendment Seizure of Right to Access a Public Building

In asserting that the ban amounts to a seizure under the Fourth Amendment, Martin misstates the law and relies upon case law that does not support his assertion. *Soldal v. Cook County* addresses Fourth Amendment seizures of property, not seizures of the person. 506 U.S. 56, 61–62 (1992). A person is not considered seized unless "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). According to his own allegations, Martin was never arrested and was free to leave the premises of the DMV. There was no violation of the Fourth Amendment.

### iii. Fourteenth Amendment Denial of Procedural Due Process

The threshold question in any due process case is decisive: has the plaintiff been deprived of a protected interest in liberty or property? *American Mfr's Mut'l Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). That inquiry is not determined by the plaintiff's subjective perspective; the plaintiff must demonstrate an active deprivation of a constitutionally protected liberty or property interest. *Tigrett v. Rector & Visitors of the Univ. of Va.*, 290 F.3d 620, 628 (4th Cir. 2002). Martin has not identified a clearly established liberty or property interest.

Martin asserts a liberty interest in accessing public facilities. While courts have recognized a fundamental right to travel within a state that protects movement

between places, they have not uniformly extended that right to include *access* to a particular place. *See Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008) (citizen had no liberty interest in access to town's Community Center); *McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1081 (10th Cir. 2020) (plaintiffs "do not have a fundamental right to remain on the City's medians"); *Porter v. Duval Cnty. Sch. Bd.*, 406 Fed.Appx. 460, 462 (11th Cir. 2010) (parent had no liberty interest in access to school premises); *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (while plaintiffs have a constitutionally protected liberty interests in lands that are open to the public generally, "a person may forfeit this right by trespass or other violation of law."); *but see Norris v. City of Asheville*, 721 F.Supp.3d 404, 414 (W.D.N.C. 2024) (prohibition on accessing city parks required an "opportunity to be heard").

In the absence of settled Fourth Circuit precedent applying the right to travel to unfettered access to public buildings like the DMV, Martin cannot establish that Hairston and Blue violated a clearly established right of which a reasonable person would have known. As such, qualified immunity applies, and Martin's claims against Hairston and Blue in their individual capacity must be dismissed.

### B. Claims Against the City of Winston-Salem

Martin brings the same claims for First Amendment retaliation, Fourth Amendment seizure, and Fourteenth Amendment denial of due process against the City of Winston-Salem under 42 U.S.C. § 1983. He argues that Winston-Salem had an independent obligation to ensure constitutional compliance before "issuing and enforcing an indefinite ban from a public facility." (D.E. 21.) Martin does not cite any authority for this argument, and the Court is not aware of any that supports his proposition. The only factual allegation that Martin alleges in his complaint is that "DMV staff contacted WSPD, who issued a trespass warning at the demand of DMV Manager Janet Blue." (D.E. 5, ¶ 17.)

 "To state a claim under § 1983, a plaintiff must [1] allege the violation of a right secured by the Constitution and the laws of the United States, and [2] show that the alleged violation was committed by a person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

With respect to the First Amendment claim, Martin has not pleaded sufficient facts to support a claim for First Amendment retaliation against the City of Winston-Salem. Winston-Salem police officers communicated a trespass warning to Martin in accord with North Carolina's second-degree trespass statute. *See* N.C. Gen. Stat. Ann. § 14-159.13. He admits that the decision to ask him to leave the premises was

made by the DMV and not the city. A proper claim, if it exists, would lie against the DMV itself.

As acknowledged in Section III(A)(ii), Martin was never seized within the meaning of the Fourth Amendment. Thus, that claim must necessarily fail.

Finally, the decision to exclude Martin from the Silas Creek DMV was made by the DMV and not by the City. The City of Winston-Salem does not have the power to overturn a decision made by the DMV. Martin has not made any allegations in his Amended Complaint against the City of Winston-Salem that would amount to a violation of his Fourteenth Amendment rights. Therefore, that claim must be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the NCDMV Defendants' Motion to Dismiss for lack of personal jurisdiction and improper service as to Paul Tine in his official capacity (D.E. 9), GRANTS the NCDMV Defendants' Motion to Dismiss for failure to state a claim as to Wanda Hairston and Janet Blue in their individual capacities (D.E. 9), and GRANTS the City of Winston-Salem's Motion to Dismiss for failure to state a claim (D.E. 14). Accordingly, the damages claims against Paul Tine and all claims against Wanda Hairston, Janet Blue and the City or Winston-Salem are DISMISSED with prejudice. The remaining official capacity claims against Paul Tine are DISMISSED without prejudice. *See Iqbal*, 556 U.S. at 678.

This the 12th day of May, 2026.

 */s/ David A. Bragdon*
United States District Judge